IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RYRICA NIKITA CUSTIS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:16-cv-00391 |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) |     United States District Judge |
| | ) | |

**MEMORANDUM OPINION**

Ryricka Nikita Custis, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants Earl Barksdale, M. Younce, D. Edwards, P. Harless, and E. Sowards denied him adequate medical care, in violation of the Eighth Amendment, while he was housed at the Red Onion State Prison ("Red Onion"). Specifically, Custis alleges in his verified complaint that he was denied a bottom bunk assignment as ordered by a Red Onion physician in September 2015. (Dkt. No. 13.) Defendants filed a motion for summary judgment arguing that defendant Barksdale was not personally involved in any deprivation of rights, that plaintiff is not entitled to damages from defendants in their official capacities, that defendants were not deliberately indifferent to a serious medical need, and that defendants are entitled to qualified immunity. (Dkt. No. 32.) Custis responded to the motion for summary judgment, making this matter ripe for disposition. (Dkt. No. 35.) Upon review of the record, the court concludes that defendants' motion for summary judgment must be granted.

I.    BACKGROUND

On February 5, 2015, Custis was transferred from Sussex I State Prison to Red Onion and assigned to a bottom bunk in general population housing. Custis was later re-assigned to a top

1

bunk on August 11, 2015, and then transferred to a medical cell on September 1, 2015, after he requested medical treatment for pain in his toes and right foot. On September 1, Dr. Smith treated Custis for low back pain related to an injury he suffered the year before at another prison, noting that Custis had bi-lateral foot pain and two amputated toes. Dr. Smith issued a medical order for Custis to be assigned to a bottom bunk for six months pending resolution of a separate order for special shoes. A nurse's note dated September 1 indicated that medical staff had seen Dr. Smith's order that day. The medical staff, however, did not complete the Medical Bottom Bunk Assignment Form or enter Dr. Smith's order until two weeks later on September 15, 2015. Meanwhile, Custis was released from the medical cell on September 3 and alleges that he was deliberately returned to his top bunk assignment, which was the assignment he held prior to being admitted to medical housing.[1] (Am. Compl. at 2-3, Dkt. No. 13; Smith Aff. ¶¶ 3-7, Dkt. No. 21-1.)

Custis alleges that on September 7, 2015, he submitted an offender request and notified Edwards of his medical order assigning him to a bottom bunk despite actually being in a top bunk. Custis alleges that Edwards, an official in the records department, had the authority to change Custis's bunk assignment or notify the appropriate prison official to do so. Nurse Harless responded to the offender request, as seen by Custis on September 11; however, Custis alleges that she failed to help him or notify the appropriate official to correct his bunk assignment. On September 17, Custis notified Edwards again by submitting an offender request to be changed from the top bunk to a bottom bunk. Custis alleges that Edwards responded on September 24,

---

[1] In his reply brief, Custis alleges that "on August 11, 2015 [he] was deliberately moved to a top bunk assignment" despite "in [his] record [he] was given a bottom bunk order by the institution doctor to be housed on a bottom bunk." (Dkt. No. 35.) The facts presented in his complaint, however, state that Custis was given the medical order on September 1st and released from his medical cell on September 3rd. Because a plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment, and Custis has not moved to amend his complaint with his reply brief claim, the court will use the September 1 date for the medical order. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

2

instructing Custis to speak with his assigned counselor or unit manager. Consequently, that same day, Custis submitted an offender request to Warden Barksdale, Unit Manager Younce, and Counselor Sowards, repeating his complaint of being in a top bunk despite his medical order for a bottom bunk. Custis alleges he received no response and no action was taken. (Am. Compl. at 2-4, Dkt. No. 13.)

In their motion for summary judgment, defendants state that after Custis was received at Red Onion on February 5, 2015, he was assigned a bottom bunk in general population but subsequently had several changes in housing assignments. Defendants state that Custis was moved within Red Onion to assignments in segregation, medical, and mental health housing, and was then "mistakenly moved to a top bunk assignment on August 11, 2015." Custis was later transferred to a medical cell on September 1, 2015, and returned to his top bunk assignment on September 3, 2015. When Custis was seen by the prison physician on September 1, his medical records note that he had "back pain" and his "feet hurt," but was in "no acute distress." (Med. Rec. at 2, Dkt. No. 21-2.) Defendants state that on October 9, 2015, Unit Manager Younce responded to an "Informal Complaint" from Custis and noted that he had been moved to a bottom bunk assignment on October 4, 2015. Following this bunk assignment, defendants state that Custis remained in a bottom bunk at Red Onion, with the exception of a ten-day segregation assignment, until his transfer to Wallens Ridge State Prison on August 31, 2016. (Younce Aff. ¶¶ 4, 6, Dkt. No. 33-1.)

## II.   DISCUSSION

**A.      Summary Judgment Standard**

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ.

P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Id.* at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation [ ] is not enough to defeat a summary judgment motion."[2] *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio. Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

**B.      Official Capacity Damages**

As a threshold matter, to the extent Custis brings this action against the defendants in their official capacities for monetary damages, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official

---

[2] In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Further, as a general rule, the nonmoving party must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex*, 477 U.S. at 324; *see also Williams*, 952 F.2d at 823. An affidavit presented in opposition to a motion for summary judgment "must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, a party cannot ward off summary judgment with an affidavit or verified complaint "based on rumor or conjecture." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *see also Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (summary judgment may be appropriate in cases where the allegations in the verified pleading are merely conclusory). Here, Custis has filed a verified complaint, and the material facts as set forth in the complaint are sufficiently corroborated by defendants' record. Thus, the court considers the factual allegations set forth in Custis's complaint as evidence.

defendants in their official capacities are not "persons" who can be sued under § 1983, the court must dismiss Custis's claims against them.

**C.      Denial of Medical Care**

Custis alleges that defendants violated his Eighth Amendment rights by denying him medical care when he received a top bunk assignment despite the Red Onion physician's medical order assigning him to a bottom bunk. Specifically, Custis argues that the physician's September 1, 2015 order assigning him to a bottom bunk was deliberately ignored by defendants, causing him to suffer pain from putting pressure on his foot to climb to the top bunk until he was moved to a bottom bunk on October 4, 2015. Defendants allege they did not deliberately deny Custis his medical assignment to a bottom bunk and that even if they were negligent in doing so, negligence is insufficient to state an Eighth Amendment claim.

In order to state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard; thus, mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. *Estelle*, 429 U.S. at 105-06; *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

5

A delay in medical treatment may also constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104-04 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Turner v. Kight*, 121 F. App'x 9, 13-14 (4th Cir. 2005) (plaintiff must show the delay, itself, caused substantial harm). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, 2011 U.S. Dist. LEXIS 88124, at *6 (E.D. Va. 2011); *see also, Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

Further, to establish a denial of medical care against non-medical personnel, an inmate must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Non-medical prison officials are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the inmate's diagnosis and course of treatment. *Id*.

Here, there is no dispute that the doctor found a medical need for the order and that defendants played no role in the failure to make others aware of the doctor's bottom bunk order initially. The person who should have implemented the September 1 medical order was not on notice of it due to a nurse – who is not a named defendant – who failed to enter it in Custis' prison file until September 15. Throughout September, and beginning on September 7, Custis submitted numerous offender requests such that each named defendant was on notice of the fact

that he had a medical order for a bottom bunk and that he was not placed on a bottom bunk. The record only shows that, as alleged by Custis, the only response he received was from Nurse Harless on September 11, which response failed to correct the situation, and from Edwards on September 24, which response consisted of telling Custis to notify other people. Otherwise, Custis received no response at all until Younce told him on October 9 that the matter had been corrected on October 4, 2015. Other than the fact that Younce responded on October 9, the record is completely devoid of information regarding when the defendants received Custis's requests, what action they took in response, or the reason for the delay. Instead, without these facts, they merely conclude that deliberate indifference did not exist. Without facts, the court cannot reach that conclusion.

Nevertheless, Custis's Eighth Amendment claim fails because he does not demonstrate that the delay in receiving his bottom bunk assignment from September 1 to October 4 caused him substantial harm. Custis alleges only general "foot pain" – pain that he had from before his September 1 medical appointment. Indeed, on the day of his appointment, the medical record notes that his "feet hurt," but he was in "no acute distress." (Med. Rec. at 2, Dkt. No. 21-2.) Custis presents no evidence that he was in "acute distress" or that the delay in being moved to a bottom bunk caused him to suffer any exacerbated, aggravated, or new injury. Nor does he show that it caused him any sufficiently imminent risk of harm. *Webb*, 281 F. App'x at 166. Further, the close temporal proximity from the time that the medical order was entered and the time that Custis was assigned a bottom bunk shows defendants adequately remedied Custis's complaint. Accordingly, Custis fails to state a claim for a denial of medical care because he fails to establish that the delay in receiving his bottom bunk assignment caused him substantial harm, and the undisputed evidence is that Custis was moved to his bottom bunk assignment by October 4.

7

Because Custis does not state a cognizable denial of medical care claim so as to state a violation of his Eighth Amendment rights, defendants are entitled to summary judgment.[3]

### III. CONCLUSION

For the reasons stated, the court grants defendants' motion for summary judgment. An appropriate order will be entered this day.

Entered: March 8, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[3] Because of the court's findings, it need not address qualified immunity.